UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

GLEN TAUZIER                                    CIVIL ACTION

VERSUS                                          NUMBER: 09-4471

JAMES LEBLANC, ET AL.                           SECTION: "S"(5)


**REPORT AND RECOMMENDATION**

Pro se plaintiff, Glen Tauzier, is an inmate of the Rayburn Correctional Center ("RCC"), Angie, Louisiana, where he is serving three concurrent terms of thirty years following his 1980 conviction for three counts of attempted first degree murder. See Tauzier v. Cain, 696 So.2d 650, 651 (La. App. 1st Cir. 1997). Plaintiff filed the above-captioned complaint under 42 U.S.C. §1983 alleging that he should be placed in protective custody at RCC due to the possibility of violence at the hands of other prisoners. (Rec. doc. 1). Named as defendants in plaintiff's complaint were James M. LeBlanc, Secretary of the Louisiana Department of Public Safety and Corrections, and Robert Tanner, then the Warden of RCC. (Id. at pp. 1, 3). In his prayer for relief, plaintiff asked only

"... to be placed in adequat[e] houseing (sic) in a safe living situation w[h]ere ... [he was] less likely to suffer from harm from physical, mental or sexual abuse until[] ... discharge." (Id. at p. 4).

Consistent with his prayer for relief, on August 5, 2009, plaintiff filed a "motion and order for protective custody" wherein he expressed concern for his safety given the fact that he had reportedly developed enemies at Angola, the Elyane Hunt Correctional Center, and Orleans Parish Prison over the years of his incarceration. (Rec. doc. 8). During a status conference that was held on plaintiff's motion on September 4, 2009, he was unable to identify by name or DOC number who any of those potential enemies might be and he had by that time been at RCC for over a year without incident. (Rec. doc. 7, p. 1). Plaintiff explained that during his previous incarceration at Angola, he was housed in a protective custody setting. At RCC, however, there is no protective custody facility as such. At the time that the conference was held, plaintiff was already housed in a one-man cell in administrative lockdown in the Sleet Unit and he expressed a desire to remain there to avoid the possibility of physical harm. At the conclusion of the conference, the Court ordered defense counsel, inter alia, to give consideration as to whether plaintiff could be permanently housed in administrative segregation in the

Sleet Unit, a form of protective custody, throughout his stay at RCC. In the interim, the Court ordered that plaintiff remain housed in a one-man cell in the Sleet Unit. (Id.).

In due course, a second status conference via telephone was held on December 10, 2009 with plaintiff and defense counsel participating. (Rec. doc. 24). Counsel advised the Court that the Warden of RCC was agreeable to allowing plaintiff to remain housed in the Sleet Unit during the remainder of his incarceration at RCC. In response, plaintiff indicated that, while in administrative segregation at RCC, he was deprived of visitation privileges, access to the jail commissary, a radio, and a television unlike inmates in protective custody in other State facilities. Counsel for the State was again directed to consult with the Warden to determine whether the aforementioned privileges would or could be afforded to plaintiff. (Id.). Shortly thereafter, counsel advised the Court and plaintiff that none of the enumerated privileges are available to inmates in protective custody at any State facilities and that to afford them to plaintiff only would be patently unfair. In subsequent filings, plaintiff has taken great exception with the advices of defense counsel to the Court, stating that inmates in protective custody at State facilities other than RCC do indeed have access to the aforementioned privileges. (Rec. doc. 27, p. 2).

As noted above, the sole relief requested by plaintiff in this

matter is his placement in a protective custody setting away from potential but yet unidentified enemies in the general prison population.  Because RCC has no protective custody facility, plaintiff has since been moved to a one-man cell in the Sleet Unit, an administrative segregation tier which is a form of protective custody that plaintiff himself has assented to.  Plaintiff's placement in the Sleet Unit has essentially rendered his request for injunctive relief moot. Edwards v. Johnson, 209 F.3d 772, 776 (5th Cir. 2000); Hernandez v. Garrison, 916 F.2d 291, 293 (5th Cir. 1990); Rocky v. King, 900 F.2d 864, 867 (5th Cir. 1990); Schwartz v. Jones, No. 99-CV-3269, 2000 WL 1859012 at *2 (E.D. La. Dec. 18, 2000).

As a consequence of being housed in the Sleet Unit, however, plaintiff, like all other inmates in administrative segregation at RCC, no longer has visitation privileges, access to the jail commissary, a radio, or a television as do inmates in the general population. Although he has not formally moved to amend his complaint, plaintiff has filed various pleadings complaining of an equal protection violation in that inmates in protective custody at other State correctional facilities have access to the privileges that he no longer enjoys. (See, e.g., rec. doc. 18).

To succeed on an equal protection claim, plaintiff must prove purposeful discrimination resulting in a discriminatory effect

4

among persons similarly situated. Muhammad v. Lynaugh, 966 F.2d 901, 903 (5th Cir. 1992). In Muhammad, the Fifth Circuit found that a prisoner housed in one prison unit was not "similarly situated" to a prisoner housed in another unit. Id. Because all inmates housed in the "Michael Unit" were not permitted to possess tape players and plaintiff was no exception, there was no constitutional violation. Id. See also Martin v. Scott, 156 F.3d 578, 580 (5th Cir. 1998), cert. denied, 527 U.S. 1041, 119 S.Ct. 2405 (1999)(inmates with different housing classifications are not similarly situated); Woods v. Collins, 68 F.3d 471, 1995 WL 581879 at *2 (5th Cir. 1995)(similarly situated inmates are those state prisoners housed in transfer facilities, not all state prisoners regardless of where they are housed). Plaintiff is not similarly situated to the inmates in other correctional facilities throughout the State.

Moreover, the fact that life at RCC may be more disagreeable than other State facilities is not dispositive as inmates have no constitutional right to be imprisoned in one particular correctional facility as opposed to another. Jackson v. Cain, 864 F.2d 1235, 1250 (5th Cir. 1989); Maddox v. Thomas, 671 F.2d 949, 950 (5th Cir. 1982). In addition, the offerings that plaintiff is no longer able to avail himself of as a result of being housed in the Sleet Unit are not mandated as inmates have no constitutional right

5

to visitation privileges, radio and television use, and the like. Scheanette v. Dretke, 199 Fed.Appx. 336, 337 (5th Cir. 2006); Gonzalez v. Johnson, 48 Fed.Appx. 103, 2002 WL 31016600 at *1 (5th Cir. 2002); Montana v. Commissioners Court, 659 F.2d 19, 23 (5th Cir. Unit A 1981), cert. denied, 455 U.S. 1026, 102 S.Ct. 1730 (1982). See also Newman v. Alabama, 559 F.2d 283, 291 (5th Cir.), rev'd in part on other grounds sub nom. Alabama v. Pugh, 438 U.S. 781, 98 S.Ct. 3057 (1977)(so long as the State furnishes its prisoners with reasonably adequate food, clothing, shelter, sanitation, medical care, and personal safety, that ends its Eighth Amendment obligations). For these reasons, it will be recommended that any equal protection claim raised by plaintiff be dismissed as frivolous under 28 U.S.C. §1915(e)(2)(B)(i). Clark v. Foti, 50 F.3d 1032, 1995 WL 136127 at *2 (5th Cir. 1995).

## **RECOMMENDATION**

For the foregoing reasons, it is recommended that plaintiff's request for injunctive relief be dismissed as moot and that any equal protection claim raised by plaintiff be dismissed under 28 U.S.C. §1915(e)(2)(B)(i).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed

factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. <u>Douglass v. United Services Auto. Assoc.</u>, 79 F.3d 1415 (5th Cir. 1996)(<u>en banc</u>).

New Orleans, Louisiana, this  15th  day of   April  , 2010 .

*[signature: Alma L. Chasez]*<br>
ALMA L. CHASEZ<br>
UNITED STATES MAGISTRATE JUDGE